**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| GEORGE KEATON, | : | **ELECTRONICALLY FILED** |
| | : | |
| Plaintiff, | : | **COMPLAINT 2:18-cv-1629** |
| | : | |
| v. | : | |
| | : | Filed on behalf of Plaintiff: |
| KEANE GROUP, INC., AUSTIN | : | GEORGE KEATON |
| McCURDY, an individual, and | : | |
| JEREMY PATRICK, an individual, | : | Counsel of Record for Plaintiff: |
| | : | Marcus Schneider, Esquire |
| Defendants. | : | PA I.D. No. 208421 |
| | : | Nicholas Pahuta, Esquire |
| | : | PA I.D. No. 324355 |
| | : | STEELE SCHNEIDER |
| | : | 428 Forbes Avenue, Suite 700 |
| | : | Pittsburgh, PA 15219 |
| | : | 412-235-7682 (phone) |
| | : | 412-235-7693 (facsimile) |
| | : | marcschneider@steeleschneider.com |
| | : | nickpahuta@steeleschneider.com |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| GEORGE KEATON, | : | Civil Action No. _____ |
| | : | |
| Plaintiff, | : | ELECTRONICALLY FILED |
| | : | |
| v. | : | |
| | : | |
| KEANE GROUP, INC., AUSTIN | : | |
| McCURDY, an individual, and | : | |
| JEREMY PATRICK, an individual, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

AND NOW Plaintiff George Keaton, by and through his undersigned counsel, files the within Complaint against Defendants Keane Group, Inc., Austin McCurdy, and Jeremy Patrick and in support thereof avers as follows:

### Introduction

Plaintiff's claims of harassment and retaliation are egregious, and the behavior detailed in this Complaint falls well-below all measures of civility. While courts will typically give industries like Defendant's a wide berth in assessing appropriate workplace conduct, this is a situation where Defendants have managed to crawl under this ever-lowering bar of human decency. Keaton was stripped of his dignity and threatened repeatedly with violence by his coworkers and superiors at Keane. When he finally reached out to Keane administrators, he was told that he was lucky to still have a job.

For months, Keaton was constantly mocked and physically assaulted in a sexual manner by the people he worked with, including the direct superiors named as co-defendants in this action. Explicitly, he was singled out for this treatment because his coworkers did not think that he lived up to their ideals of masculinity. As a condition of his work, Keaton was required to be

2

in direct contact with his tormentors practically every waking moment for weeks at a time. He was kept in line by threats of termination and physical violence, and he stayed at his job under abject conditions to support his family the only way he could. When faced with a team of administrators that seemed to dismiss his allegations entirely, Keaton felt he had to leave his job at great personal expense. The consequences of the events detailed below were shouldered by Keaton alone, as all of his alleged abusers remain at Keane and are free to subject the next unlucky employee to the same treatment Keaton endured.

### Jurisdiction

1. This is an action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act 34 of 1997 (PHRA), 43 P.S. § 951 *et seq.,* and Pennsylvania Common Law.

2. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and Plaintiff's PHRA and common law claims pursuant to 28 U.S.C. § 1367.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this judicial district.

### Parties

4. Plaintiff George Keaton ("Keaton") is an adult individual who resides at 664 Peters Fork Road, Clendenin, WV 25045.

5. Defendant Keane Group, Inc. ("Keane") is incorporated under the laws of the State of Texas. Defendant's registered mail address is 1999 Bryan Street, Suite 900, Dallas, TX 75201.

6. Keane's corporate headquarters is located at 5825 North Sam Houston Parkway West, Suite 600, Houston, TX 77086.

7. At all times relevant to this Complaint, Keane conducted continuous and systematic business in Western Pennsylvania.

8.  Keane's local branch office is located at 1245 Old Route 119, Mount Pleasant, PA 15666.

9.  Defendant Austin McCurdy ("Defendant McCurdy") is an adult individual who resides at 859 Twolick Drive, Indiana PA 15701.

10. Defendant Jeremy Patrick ("Defendant Patrick" or "J.P.") is an adult individual who resides at 32 East Market Street, Gratz, PA 17030.

11. At all times relevant to Keaton's claims, Keane acted by and through its agents, servants, and employees acting in the course and scope of their employment or agency relationship with Keane.

### Exhaustion of Administrative Remedies

12. Keaton filed EEOC intake paperwork regarding his claims of harassment and retaliation on March 13, 2018.

13. The EEOC filed a charge against Keane on August 10, 2018.

14. Keaton elected to have these claims dual-filed with the PHRC on or around September 6, 2018.

15. A full and complete copy of Keaton's EEOC Intake Information, charge of discrimination, and election to dual-file has been collectively included with this Complaint as Exhibit A.

16. Plaintiff Requested a Right-to-Sue from the EEOC on September 10, 2018. Plaintiff was granted this Right-to-Sue notice on October 12, 2018. A true and correct copy of Keaton's Right-to-Sue letter has been included with this Complaint as Exhibit B.

17. Plaintiff hereby brings this Complaint within 90 days of his receipt of the EEOC's Right-to-Sue letter.

### Factual Background

18. Keaton was hired and began work as an equipment operator for Keane in October 2017.

19. In that position, Keaton was responsible for operating and maintaining the equipment at Keane's hydraulic fracture drilling (fracking) sites throughout Western Pennsylvania, West Virginia, and Ohio.

20. As part of his job responsibilities, Keaton was required to work two weeks at a time with his specific crew.

21. During those weeks, Keaton lived with this crew in adjoining hotel rooms provided by Keane near the various natural gas extraction sites throughout Western Pennsylvania.

22. For several months, Keaton's direct supervisor at Keane was John Marr.

23. Marr left Keane. His separation with the company was unrelated to Keaton's claims against Keane.

24. After Marr left Keane, Keaton's direct supervisor became Defendant Patrick.

25. In addition to having a supervisor, Keaton also had a "mentor" assigned by Keane.

26. Upon starting a Keane, Defendant Austin McCurdy was assigned as Keaton's mentor, and Defendant McCurdy remained Keaton's employment.

27. As his mentor, Defendant McCurdy was Keaton's superior.

28. At all times relevant to this Complaint, Evan Green was the site supervisor responsible for Keaton's crew. As site supervisor, Green supervised Defendants Patrick and McCurdy and was their direct report.

29. In his position as site supervisor, Green was present at the crew's work site for part of every day.

**A. Keaton is subjected to relentless harassment by his Keane supervisors and coworkers.**

30. Starting in November 2017, Keaton's coworkers and supervisors harassed, humiliated, and assaulted Keaton because of what they perceived to be a lack of masculinity and manliness.

31.  During these periods, Keaton would typically have to wake up at 5:00 AM to be transported via crew bus to frack extraction sites.


32.  Keaton's superiors Defendant Patrick, Defendant McCurdy, and Marr and Keaton's coworkers Frank Gash, Zack Ziddick, and Ben Bloom verbally harassed Keaton on a daily basis, starting as early as 5:00 AM on the crew bus.

33.  The verbal harassment of these coworkers and direct superiors included referring to Keaton as "fat ass," "fat piece of shit," and "fat fuck."

34.  These same individuals would regularly use sex-based epithets to malign Keaton's masculinity by referring to him as "big titty bitch," "fat fucking bitch", and "fucking faggot."

35.  Nobody else on the crew was subjected to this targeted abuse.

36.  In addition to this daily verbal harassment, Keaton's coworkers and superiors sexually harassed and threatened to and frequently did physically assault Keaton.

37.  Defendant Patrick threatened Keaton physically on multiple occasions, saying that he would like to punch Keaton in the face.

38.  Defendants Patrick and McCurdy and Keaton's coworkers would regularly attempt to punch or strike Keaton in the genitals.

39.  At least once a week, someone on Keaton's crew would try to penetrate his anus through his clothes as others looked on. Individual employees did this using either their fingers or tools.

40.  Everyone on the crew, including Defendants Patrick and McCurdy and supervisor John Marr, knew about this practice and joked about it openly.

41.  Keaton had multiple issues with his assigned "mentor," Defendant McCurdy.

42.  As Keaton's mentor at Keane, Defendant McCurdy was with him at all times throughout the work day.

6

43. This constant contact, required by Keane, allowed Defendant McCurdy to become a constant antagonist and tormentor of Keaton.

44. Keaton was often assigned to work in close proximity in the site's FRAC van with his main abusers: Marr and Defendants Patrick and McCurdy.

45. On one occasion on the crew bus, Defendant McCurdy asked Keaton "do you want to see my dick?" and then proceeded to pull out his penis and try to touch Keaton with it.

46. Following this incident, Defendant McCurdy would occasionally try to get Keaton to look at McCurdy's phone by indicating there was something work-related to show him. Defendant McCurdy would then show Keaton a picture of McCurdy's penis to him.

47. Following one of these picture incidents, Defendant McCurdy threatened Keaton with sexual violence by saying "one of these days I'm going to rape you--fuck you in the ass."

48. Defendant McCurdy also threatened to "titty fuck" Keaton on another occasion.

49. On or around January 25, 2017, Defendant Patrick approached Keaton in front of the rest of the crew and bet Keaton that he could not touch his toes. When Keaton bent down to show that he could, Defendant Patrick forcibly shoved Keaton's face into Patrick's crotch.

50. Defendant McCurdy made these threats in full view of other crew members and supervisors.

51. On a single occasion in late December, Site Supervisor Evan Green heard Defendant McCurdy call Keaton a "fat fuck piece of shit" and threatened to write up McCurdy.

52. Following this threat, Defendant McCurdy continued to refer to Keaton in this manner and by using the sexually-demeaning epithets described above. Evan Green witnessed portions of this continued harassment and did not follow through on his threat to write up Defendant McCurdy.

53. Upon information and belief, aside from this one threatened rebuke by Green, no Keane employee ever objected to Mr. McCurdy's behavior or told him to stop.

54. Upon information and belief, Keaton was singled out for this harassment based on his size, weight, and the crew's perception that he was not masculine enough to work in the oil and gas industry and as a member of their crew.

55. Keaton never did or said anything to suggest that this behavior was welcome or taken as a joke.

56. Keaton also experienced harassment based on his daughter's developmental disabilities.

57. Keaton's daughter is diagnosed with cerebral palsy and centronuclear myopathy.

58. Keaton's coworkers at Keane knew that his daughter had developmental disabilities because he had spoken about it at work.

59. In one instance of harassment based upon his daughter's disabilities, the Keane crew's engineer Frank Gash told the rest of the crew over the radio that all disabled people should be put to death because they are a burden on the rest of society.

60. Upon information and belief, Gash was targeting Keaton when he made this comment.

61. Keane's hotels and FRAC sites would often be located in isolated areas, and Keaton struggled to find times to escape his coworkers' attention.

62. When Keaton tried to find a place to eat after returning to the hotel from his shift, his coworkers would usually be in the same place.

63. Because Keane required Keaton to live, work, eat, and travel with these individuals, for two week stretches at a time Keaton was virtually unable to escape his tormentors when he was not sleeping.

64. Defendants' harassment of Keaton started at 5:00 in the morning each day as they rode the crew bus to the work site.

65. After they reached the FRAC site, Keaton would then spend the next twelve hours in constant contact and physical proximity with these individuals.

66. In the rare instance that Keaton was outside of contact with his coworkers, they would continue their harassment and name-calling on the company radio for him to hear.

67. Upon information and belief, Site Supervisor Green was able to hear this ongoing harassment on the radio remotely and while visiting the work site.

68. Keaton was required to work and travel with these men for 15 to 16 hours each day for weeks at a time.

69. During this time and as a result of the constant harassment and abuse, Keaton struggled with depression symptoms.

70. Keaton dreaded attending work because of the hostile environment, but he continued to do so because he needed the job to support his family.

**B. Keaton is suspended from Keane.**

71. On January 27, 2018, two days after the incident in which Defendant Patrick shoved Keaton's face into Patrick's crotch, Keaton called out of work because he had overslept after dealing with a medical issue his daughter was having.

72. The following day, Keaton attended work as scheduled.

73. Towards the end of his shift, Defendant Patrick called Keaton aside and told Keaton that he was being written up for missing work the previous day.

74. Frustrated by the continuous harassment he was experiencing, Keaton raised his voice at Patrick and stated he was exhausted with the continual harassment he was experiencing. Defendant Patrick proceeded to suspend Keaton for two weeks until he could "get his head on straight."

75. In the four months that Keaton worked for Keane, he had never seen another crew member subjected to discipline for calling off work.

**C. Keaton seeks medical treatment.**

76. Keaton used his time off to finally seek medical treatment for the depressive symptoms he was experiencing as a result of the treatment he was experiencing at the hands of his supervisors and coworkers.

77. For several months, Keaton dreaded going to work and dealing with his abusive coworkers.

78. While at Keane, Keaton started drinking and smoking cigarettes to deal with the stress this treatment has put him under.

79. During his employment at Keane, Keaton sought treatment with a nurse practitioner, Sarah Garand, FNP-BC, who diagnosed him with depression and prescribed a course of antidepressants.

80. Keaton has discontinued seeing Nurse Garand and taking his prescribed medication because he could not afford the sessions or prescription costs without his Keane health benefits.

81. Keaton continues to experience symptoms of depression and anxiety but has forgone treatment out of economic necessity.

**D. Keaton is reluctant to report the harassment, abuse, and humiliation to Keane Human Resources because of threats of violence.**

82. Throughout his employment at Keane, Keaton was reluctant to go to Human Resources because of implicit and explicit threats to his job and safety from his abusive crew members.

83. The abuse Keaton suffered was committed with full supervision and participation by his direct supervisors and Keaton's Keane "mentor."

84. On several occasions, Defendant McCurdy and Defendant Patrick told Keaton that if he were to go to Human Resources, they would find some way of getting rid of him using their influence and recognition within the company.

85. On one occasion where Keaton threatened to go to Human Resources or Keane administrators, Defendants McCurdy and Patrick also threatened Keaton's physical safety, saying "who knows, people get killed or hurt out here all the time."

86. Keaton perceived these comments as threats he would be purposefully harmed if he were to report the harassment, abuse, and humiliation he was experiencing.

87. Crew members had spoken to Keaton about Defendant Patrick allegedly abusing steroids.

88. Keaton was convinced that Defendant Patrick could and would carry out the threats Defendant Patrick had made against him.

89. Upon information and belief, Defendant Patrick had been moved from crew to crew by Keane administrators because of similar interpersonal problems, including harassment and assault of other employees.

   **E. Keane maintains inadequate policies for reporting sexual harassment.**

90. Furthermore, Keaton did not contact Human Resources because he was unsure of the specific reporting process to be followed and who to contact to make a report.

91. Over the course of his employment at Keane, Keaton was never provided with adequate tools needed to safely report harassment and physical assault on the job.

92. During his orientation, a presenter briefly showed a PowerPoint Presentation slide outlining the company's harassment policy and told the new Keane employees to simply "be adults."

93. Apart from his orientation in November 2017, Keaton had no idea about the company's Human Resource reporting process or procedure.

94. Keane's 2017 employee handbook, which the company provided to new employees, outlines a superficial two-page section on "Workplace Violence."

95. This handbook section implores employees affected by harassment or physical violence to inform their supervisor. In the event that the harassment involves the employee's

11

supervisor, the employee handbook advises the employee to report to Human
Resources. The manual fails to provide appropriate Human Resources contact
information. A true and correct copy of this facially inadequate "Workplace Violence"
policy has been included with this Complaint as Exhibit C.

96. In attempting to resolve this matter, Keaton's counsel tried to contact his Human
Resources representative three times through Keane's Mt. Pleasant, Pennsylvania
offices, where Keaton's work orders came from.

97. Each time, phone calls were diverted to an unidentifiable voicemail box. Nobody from
the Mt. Pleasant office ever returned the messages left at that number.

98. Keaton was only ever able to initiate contact with Keane HR by reaching out to the
company's corporate administrative offices in February 2018.

99. At this time, Keane's Regional Human Resources Representative Denise Sherman
requested that Keaton draft a letter outlining his alleged abuse.

**F. Keaton reports the harassment, assault, and humiliation to Keane Human Resources.**

100. On February 13, 2018, Keaton sent a letter to Ms. Sherman outlining the abuse detailed
above.

101. Keaton's letter indicated that he was only willing to return to work following his
suspension if the company took remedial measures to address the situation and ensure
his safety.

102. Keaton's letter also asked whether it was possible to go on any sort of protected leave
based upon his depression diagnosis and the severity of the treatment he expected
upon his return.

**G. Keane inadequately investigates Keaton's Complaint.**

103. A day after sending this letter, Keaton was asked to attend a meeting with Keane
administrators in the office of Ben Jones and Ryan Coker.

104. This meeting included Frac Office Manager Ben Jones, District Manager Ryan Coker, and HR Business Partner Garrett Stanley.

105. In that meeting, the Keane administrators were not sympathetic to Keaton's situation at all.

106. Instead, Ryan Coker told Keaton that he was responsible for the abuse he suffered because Keaton had the employee handbook and knew how to connect with Human Resources but had failed to do so.

107. In response to the request for leave in Keaton's letter, Keaton was told that he was not entitled to any sort of leave, paid or otherwise.

108. Ben Jones said that he would talk to Keaton's crew about his allegations, but Jones made no indication that anyone would face disciplinary action.

109. Garrett Stanley told Keaton that he could be transferred to a different crew to wait for "shit to blow over."

110. The Keane representatives also implied that Keaton should be thankful he still had a job with the company, specifically warning Keaton that he had two write-ups and that he would be fired if he got in trouble once more at work.

111. Both of these write-ups regarded the incident when Keaton "blew up" at Defendant Patrick, the man who had been physically and mentally abusing him at work, on the day Keaton was suspended.

112. Upon information and belief, Keane has not fired or disciplined any member of Keaton's crew following his removal.

**F. Keane constructively discharges Keaton.**

113. Upon his return to work, Keane transferred Keaton to a different crew.

114. This transfer required Keaton to travel substantially farther to get to work sites each week.

115. In addition, Keaton had to "start over" with the seniority he had built with his former crew, where he was in line to be promoted to Pump Operator based upon his seniority.

116. Following his transfer, Keaton began to receive unsolicited text messages from his former crew coworkers asking why he was transferred. Those text messages continue today.

117. From these text messages, Keaton learned that none of the men on his old crew were disciplined following his transfer, despite Ben Jones' assurance that Keane would investigate his allegations.

118. Finding it impossible to work for the company that ignored his requests for help and enabled his abusers, Keaton resigned from Keane on or about February 2018.

**H. Keaton is suffering ongoing economic injuries from Keane's harassment, retaliation, and constructive discharge.**

119. Keaton also faced economic damages attendant to the physical and verbal harassment he suffered.

120. Keaton had to withdraw from consideration from a better position as the Keane crew's Pump Operator, because he thought that might abate some of the harassment he was experiencing.

121. Keaton was suspended from work for several weeks without pay when he finally confronted his supervisor, Defendant Patrick about the treatment he was receiving.

122. Keaton lost any seniority he had developed and was subsequently denied the opportunity to become a Pump Operator after his transfer to a new crew.

123. Since leaving Keane, Keaton has taken a position at a pipeline company. While Keaton's hourly salary in this new position is commensurate to that offered by Keane, Keaton now has to travel more frequently and for more days out of the week.

124. Keaton does not receive the same benefits and has lost any seniority built while working at Keane.

125. The nature of Keaton's current position requires him to be laid-off each winter. While he is given no guarantee at continued employment with this new company, he expects to be without an income at least between December and February.

126. Based on communications with his old Keane coworkers, no Keane crew members have faced adverse consequences from the revelation of their behavior.

127. Upon information and belief, both Defendants Patrick and McCurdy remain in positions of authority with the company.

**COUNT I: Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**Hostile Work Environment Harassment**
**Defendant Keane Group, Inc.**

128. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

129. Plaintiff's protected class is sex/gender.

130. Plaintiff was consistently and continuously subject to demeaning, derogatory and/or discriminatory treatment and assault by his Keane supervisors and coworkers throughout his employment with Defendant.

131. Keaton was physically violated in a sexual manner on an almost-daily basis in the following ways: having his face shoved in his supervisor's genitals, being touched with his mentor's penis, and having individual crew members attempt to shove tools and hands into his backside.

132. The sexual nature of these attacks is further contextualized by threats of further, specifically-sexual violence made by Keaton's Keane superiors, including threats of rape and "titty fucking."

133. As discussed *supra*, Keaton was singled out for this treatment because of his crew's perception that he was not masculine enough.

134. This perception is evidenced by the specific taunts leveled against Keaton by his coworkers and supervisors, which explicitly characterized him as effeminate, un-masculine, and deserving of sexual assault and humiliation.

135. The sexual harassment by Keaton's coworkers and supervisors was unwelcome, hostile, offensive, severe, and pervasive.

136. Plaintiff expressed his concerns to Defendant's management, human resources, and outside legal counsel; however, Plaintiff's complaints were never properly investigated or resolved in any meaningful manner.

137. Despite Plaintiff's requests, Keane completely failed to remediate the hostile work environment he complained about.

138. Defendant's actions, through its agents and servants as set forth above, would detrimentally affect a reasonable person in Keaton's position.

139. Defendant either knew or should have known of the existence of a sexually hostile environment.

140. As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, embarrassment and like conditions, as well as suffering a loss of income and fringe benefits.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII;

B. That Defendant be required to compensate Keaton for the full value of wages he would have received had it not been for Defendant's illegal treatment of Keaton, with interest from the onset of the sexual harassment;

C. That Defendant be required to provide Keaton with front pay;

D.  That Keaton be awarded compensatory damages in an amount to be determined at trial;

E.  That Defendant be ordered to pay Keaton punitive damages;

F.  That Defendant be enjoined from discriminating or retaliating against Keaton in any manner prohibited by Title VII;

G.  That Keaton be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

H.  That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

**COUNT II: Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**Retaliation**
**Defendant Keane Group, Inc.**

141. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

142. Plaintiff Keaton engaged in protected activity under Title VII by reporting the hostile and humiliating treatment of his coworkers and supervisors to Keane Human Resources.

143. Defendant's threats of retribution constitute anticipatory retaliation for Keaton's protected activity, including warnings that he would be fired or physically harmed if he reported his concerns to Human Resources.

144. Following his reports to Human Resources, Plaintiff was subjected to multiple forms of retaliation, including but not limited to his suspension from work for several weeks, his reassignment and subsequent loss of seniority, and threats from Keane administrators that he may lose his job if he got into any more trouble.

145. Defendant's actions directed to Keaton created a retaliatory hostile work environment which culminated in his constructive discharge.

146. Through their actions as set forth above, Defendant discriminated against Keaton in term and condition of his employment because of his complaints of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1),

147. Defendant's actions were intentional and were taken in reckless indifference to Keaton's federally protected right to not be subject to unwelcome and unwanted conduct of a retaliatory nature.

148. As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, embarrassment, and like conditions, as well as suffering a loss of income and fringe benefits.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII;

B. That Defendant be required to compensate Keaton for the full value of wages he would have received had it not been for Defendant's illegal treatment of Keaton, with interest from the onset of the sexual harassment;

C. That Defendant be required to provide Keaton with front pay;

D. That Keaton be awarded compensatory damages in an amount to be determined at trial;

E. That Defendant be ordered to pay Keaton punitive damages;

F. That Defendant be enjoined from discriminating or retaliating against Keaton in any manner prohibited by Title VII;

G. That Keaton be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

H. That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT II: HARASSMENT
## Pennsylvania Human Relations Act
## Defendant Keane Group, Inc.

149. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

150. Plaintiff's protected class is sex/gender.

151. Plaintiff was consistently and continuously subjected to demeaning, derogatory and/or discriminatory treatment by his Keane supervisors and coworkers throughout his employment with Defendant.

152. As discussed *supra*, Keaton was singled out for this treatment because of his crew's perception that he was not masculine enough.

153. This perception is evidenced by the specific taunts leveled against Keaton by his coworkers and supervisors, which explicitly characterized him as effeminate, un-masculine, and deserving of sexual assault and humiliation.

154. The sexual harassment by Keaton's coworkers and supervisors was unwelcome, hostile, offensive, severe, and pervasive.

155. Plaintiff expressed his concerns to Defendant's management, human resources, and outside legal counsel; however, Plaintiff's complaints were never properly investigated or resolved in any meaningful manner.

156. Despite Plaintiff's requests, Keane completely failed to remediate the hostile work environment he complained about.

157. Defendant's actions, through its agents and servants as set forth above, would detrimentally affect a reasonable person in Keaton's position.

158. Defendant either knew or should have known of the existence of a sexually hostile environment.

19

159. As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, embarrassment and like conditions, as well as suffering a loss of income and fringe benefits.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to the Pennsylvania Human Relations Act 34 of 1997, 43 P.S. § 951 *et seq.,* as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the PHRA;

B. That Defendant be required to compensate Keaton for the full value of wages he would have received had it not been for Defendant's illegal treatment of Keaton, with interest from the onset of the sexual harassment;

C. That Defendant be required to provide Keaton with front pay;

D. That Keaton be awarded compensatory damages in an amount to be determined at trial;

E. That Defendant be ordered to pay Keaton punitive damages;

F. That Defendant be enjoined from discriminating or retaliating against Keaton in any manner prohibited by the PHRA;

G. That Keaton be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

H. That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT IV: RETALIATION
### Pennsylvania Human Relations Act
### Defendant Keane Group, Inc.

160. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

161. Plaintiff Keaton engaged in protected activity under the PHRA by reporting the hostile and humiliating treatment of his coworkers and supervisors to Keane Human Resources.

162. Defendant's threats of retribution constitute anticipatory retaliation for Keaton's protected activity, including warnings that he would be fired or physically harmed if he reported his concerns to Human Resources.

163. Following his reports to Human Resources, Plaintiff was subjected to multiple forms of retaliation, including but not limited to his suspension from work for several weeks, his reassignment and subsequent loss of seniority, and warnings from Keane administrators that he may lose his job if he got into any more trouble.

164. Defendant's actions directed to Keaton created a retaliatory hostile work environment which culminated in his constructive discharge.

165. Through their actions as set forth above, Defendant discriminated against Keaton in term and condition of his employment because of his complaints of sexual harassment in violation of the PHRA, 43 P.S. § 951 *et seq.*

166. Defendant's actions were intentional and were taken in reckless indifference to Keaton's federally protected right to not be subject to unwelcome and unwanted conduct of a retaliatory nature.

167. As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, embarrassment, and like conditions, as well as suffering a loss of income and fringe benefits.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to the Pennsylvania Human Relations Act 34 of 1997, 43 P.S. § 951 *et seq.,* as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the PHRA;

B. That Defendant be required to compensate Keaton for the full value of wages he would have received had it not been for Defendant's illegal treatment of Keaton, with interest from the onset of the sexual harassment;

C. That Defendant be required to provide Keaton with front pay;

D.  That Keaton be awarded compensatory damages in an amount to be determined at trial;

E.  That Defendant be ordered to pay Keaton punitive damages;

F.  That Defendant be enjoined from discriminating or retaliating against Keaton in any manner prohibited by Title VII;

G.  That Keaton be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

H.  That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT V: CIVIL ASSAULT and BATTERY
### Pennsylvania Common Law
### Defendant Patrick

168.  Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

169.  While working with Keaton at Keane, Defendant Patrick caused harmful and offensive physical contact to Keaton, including but not limited to shoving Keaton's face into Defendant Patrick's crotch, striking Keaton in the genitals, and attempting to penetrate Keaton's anus with tools or fingers.

170.  Defendant Patrick took this course of actions without any legally recognized privilege.

171.  Defendant Patrick intended to cause such harmful contact with Keaton and/or to cause Keaton immediate apprehension of such harmful contact.

172.  As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, and embarrassment.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Pennsylvania common law as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Common Law;

B. That Keaton be awarded compensatory damages in an amount to be determined at trial;

C. That Defendant be ordered to pay Keaton punitive damages; and

D. That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

### COUNT VI: CIVIL ASSAULT and BATTERY
### Pennsylvania Common Law
### Defendant McCurdy

173. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

174. While working with Keaton at Keane, Defendant McCurdy caused harmful and offensive physical contact to Keaton, including but not limited to touching Keaton with his penis, striking Keaton in the genitals, and attempting to penetrate Keaton's anus with tools or fingers.

175. Defendant McCurdy took this course of actions without any legally recognized privilege.

176. Defendant McCurdy intended to cause such harmful contact with Keaton and/or to cause Keaton immediate apprehension of such harmful contact.

177. As a direct and proximate result of Defendant's actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, and embarrassment.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Pennsylvania common law as follows:

A. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the Pennsylvania Common Law;

B. That Keaton be awarded compensatory damages in an amount to be determined at trial;

C.   That Defendant be ordered to pay Keaton punitive damages; and

D.   That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

### COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Pennsylvania Common Law
### Defendants McCurdy and Patrick

178.   Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

179.   Defendants engaged in a course of sustained physical and emotional abuse of their subordinate employee, as discussed *supra*, and encouraged Keaton's coworkers to engage in the same behavior.

180.   In addition to this verbal and physical harassment, Defendants retaliated against Keaton—both after Keaton warned them to stop this treatment and after Keaton went to HR. Both Defendants threatened that they would use their influence with Keane to get Keaton fired and then threatened him with physical violence.

181.   Further, when Keaton "blew up" at Defendants and told them to stop treating him in this manner, Defendant Patrick wrote Keaton up and suspended him in retaliation.

182.   Defendants' conduct was intentional, extreme, outrageous, and retaliatory.

183.   As a direct and proximate result of Defendants' actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, and embarrassment.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Pennsylvania common law as follows:

A.   That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the Pennsylvania Common Law;

B.   That Keaton be awarded compensatory damages in an amount to be determined at trial;

C. That Defendant be ordered to pay Keaton punitive damages; and

D. That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Pennsylvania Common Law
### Defendant Keane Group, Inc.

184. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

185. Defendant Keane subjected Keaton to extreme and outrageous conduct throughout his employment, including but not limited to the physical and verbal harassment and retaliation conducted by his superiors and direct supervisors in Defendant's organization.

186. When Keaton was finally able to report this abuse to Human Resources, Keane administrators admonished Keaton for letting this treatment go on for so long and told Keaton that he would be fired if he were involved in another incident.

187. Defendant's conduct was intentional and/or reckless.

188. As a direct and proximate result of Defendants' actions, Keaton suffered severe emotional and physical distress, including humiliation, mental distress, and embarrassment.

**WHEREFORE**, Plaintiff George Keaton demands judgment pursuant to Pennsylvania common law as follows:

E. That the Court enter a judgment declaring Defendants' actions to be unlawful and in violation of the Pennsylvania Common Law;

F. That Keaton be awarded compensatory damages in an amount to be determined at trial;

G. That Defendant be ordered to pay Keaton punitive damages; and

H. That Keaton be granted such further legal and equitable relief as the Court may deem just and proper.

**COUNT IX: NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
**Pennsylvania Common Law**
**Defendant Keane Group, Inc.**

189. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

190. Defendant had an obligation to provide Plaintiff with a workplace free of threat, harassment, retaliation, deprivation of his civil and constitutional rights, and denigration by his superiors and coworkers.

191. Defendant ignored Plaintiff's complaint regarding the harassment, threats of retaliation, and actual retaliation he suffered at the hands of his coworkers and supervisors.

192. Defendant knew or should have known of its employees' proclivities for improper, unreasonable, harassing and retaliatory actions such that an exercise of reasonable care would have stopped and/or prevented such conduct.

193. In particular, Defendant knew or should have known that Keaton's superiors Defendants Patrick and McCurdy physically and verbally harassed, humiliated, and threatened Keaton on a daily basis throughout his time at Keane.

194. Defendant failed to properly and effectively train its employees that engaging in retaliatory conduct is illegal and improper.

195. Defendant failed to properly and effectively train its employees in proper procedures for recognizing and reporting acts of discrimination, harassment, and retaliation to Human Resources.

196. Defendant failed to ensure that its employees, in particular Defendants Patrick and McCurdy, did not engage in any retaliatory behavior on their behalf or in retaliation for reporting harassment and discrimination.

197. Defendant's failure to properly hire, supervise, and/or retain its employees and address their discriminatory and retaliatory conduct in an appropriate manner caused injury to Plaintiff.

**WHEREFORE,** Plaintiff George Keaton demands judgment pursuant to Pennsylvania common law as follows:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, insurance benefits, and other benefits;

B. Plaintiff is to be awarded actual damages, as well as damages for the pain, emotional damages, suffering, and humiliation caused by Defendant's actions;

C. Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious, and outrageous conduct and to deter Defendant and other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

E. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

*/s/ Nicholas Pahuta*
Nicholas Pahuta, Esquire
PA I.D. No. 324355
Marcus Schneider, Esquire
PA I.D. No. 208421
STEELE SCHNEIDER
428 Forbes Avenue, Suite 700

Pittsburgh, PA 15219
(412) 235-7686
(412) 235-7693/facsimile
marcschneider@steeleschneider.com
nickpahuta@steeleschneider.com
*Counsel for Plaintiff*